NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LORENZO OLIVER,** | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | |
| | **OPINION and** |
| v. | **REPORT AND RECOMMENDATION** |
| | |
| **PAULA T. DOW,** individually and in her official capacity as Attorney General for the State of New Jersey, **MERRILL MAIN,** Ph.D., individually and in his official capacity as Clinical Director of the Special Treatment Unit, **JENNIFER VELEZ,** individually and in her official capacity as Commissioner of the Department of Human Services, **JONATHAN POAG,** individually and in his official capacity as Director of the Division of Mental Health Services, **GARY M. LANIGAN,** individually and in his official capacity as the Commissioner of the Department of Corrections, **CHARLIE JONES,** individually and in his official capacity as a member of the New Jersey Board of Parole, **LOUIS ROMANO,** individually and in his official capacity as a member of the New Jersey Board of Parole, and John/Jane Does 1-10, individually and in their official capacities, | Civil Action No.: 10-1542 (DMC-JAD) |
| Defendants. | |

DICKSON, U.S.M.J.

This matter comes before the Court upon motion by Lorenzo Oliver ("Plaintiff") to

amend Plaintiff's Amended Complaint to (1) add a proposed cause of action against defendants

Paula T. Dow ("Dow"), Merrill Main ("Main"), Jennifer Velez ("Velez"), Jonathan Poag

1

("Poag"), and Gary M. Lanigan ("Lanigan") (collectively, "Defendants") for violation of procedural and substantive due process guarantees under the Fourteenth Amendment ("the Proposed First Cause of Action"); (2) add Joseph Elchin and Matthew Harris as plaintiffs; (3) withdraw Plaintiff's First Cause of Action (violation of double jeopardy clause), Second Cause of Action (violation of ex post facto clause), Fifth Cause of Action (violation of due process guarantees under the Fourteenth Amendment), and Sixth Cause of Action (violation of cruel and unusual punishment clause); and (4) certify this matter as a class action for the Proposed First Cause of Action and appoint class counsel pursuant to FED. R. CIV. P. 23.  Defendants oppose Plaintiff's motion to add the Proposed First Cause of Action and to certify this action.

For the reasons stated below, Plaintiff's motion to add two plaintiffs and to withdraw the four causes of action is **granted** and Plaintiff's motion to add the Proposed First Cause of Action is **denied**.  The Court additionally respectfully recommends that the District Court **deny** Plaintiff's motion to certify this matter as a class action for the Proposed First Cause of Action and to appoint class counsel.

## I.    PROCEDURAL BACKGROUND

Plaintiff is a civilly committed individual currently confined at the Special Treatment Unit ("STU") in Avenel, New Jersey pursuant to the New Jersey Sexually Violent Predator Act (the "SVPA") (N.J.S.A. 30:4-27:24, *et seq.*).  On March 22, 2010, Plaintiff filed a complaint for damages and declaratory and injunctive relief under 42 U.S.C. § 1983 against defendants Dow, Main, Velez, Poag, Lanigan, Charlie Jones, and Louis Romano alleging that they violated Plaintiff's constitutional and statutory rights in connection with the State of New Jersey's implementation of the SVPA, the administration of the STU, and operation of the New Jersey Department of Corrections ("DOC").  (Compl. ¶ 3, ECF No. 1).  Specifically, Plaintiff asserted

claims for violation of the Double Jeopardy and Ex Post Facto Clauses of the U.S. Constitution; violation of procedural and substantive due process guarantees of the Fourteenth Amendment; violation of the cruel and unusual punishment clause of the Eighth Amendment; violation of the Equal Protection Clause of the Fourteenth Amendment; violation of the Americans With Disabilities Act, 42 U.S.C. § 12132; violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; violation of Civil Rights of Civilly Committed Persons under N.J.S.A. § 30:4-24.1; violation of the New Jersey Patients Bill of Rights under N.J.S.A. 30:4-24.2; and violation of the right to adequate treatment under the New Jersey State Constitution. *Id.* at ¶¶ 58-89.

On April 15, 2010, Plaintiff filed an Amended Complaint to correct typographical errors in the original Complaint. (Amend. Compl., ECF No. 5). Plaintiff now seeks leave to file a Second Amended Complaint to add two plaintiffs who, like Plaintiff, are currently civilly committed and confined at the STU, and to add an additional claim against Defendants for violation of procedural and substantive due process guarantees under the Fourteenth Amendment. (Sec. Amend. Compl., ¶¶ 23-24, Count 1, ECF No. 16-4).

Under the Proposed First Cause of Action, Plaintiff alleges that the methods, means, standards, procedures, and practices used to determine dangerousness of an individual under the SVPA have insufficient validity and are unreliable. *Id.* at ¶¶ 65-66. Accordingly, Plaintiff seeks to enjoin Defendants "from continuing to restrain or confine" Plaintiff, the two proposed plaintiffs, and others, who were determined to be dangerous under the SVPA by the methods, means, standards, procedures, and practices used by Defendants. *Id.* at ¶ 86(b). Plaintiff also seeks to certify this matter as a class action for the limited purpose of the Proposed First Cause of Action only, and requests appointment of class counsel. (Pl. Brief 12, ECF No. 16-9).

Finally, as stated, Plaintiff's proposed Second Amended Complaint withdraws Plaintiff's First, Second, Fifth and Sixth Causes of Action in the Amended Complaint.

Defendants oppose Plaintiff's motion to add the Proposed First Cause of Action on the basis of futility, arguing that (1) the Proposed First Cause of Action is without merit because the methods used to determine dangerousness under the SVPA are, in fact, constitutional (Def. Br. 10-15, ECF No. 17), and (2) Plaintiff's Proposed First Cause of Action attacks the validity of his civil confinement and seeks relief in the form of his release from his civil commitment and must, therefore, be brought as a habeas corpus petition and not as a civil rights action under 42 U.S.C. § 1983. (Def. Lr. Br. 1, ECF No. 22). Defendants further argue that class certification should be denied because (1) there is no merit to Plaintiff's Proposed First Cause of Action for which Plaintiff is seeking class certification, and (2) Plaintiff fails to satisfy the requirements set forth in FED. R. CIV. P. 23(a) necessary for class certification. (Def. Br. 15, ECF No. 17).

## II.   FACTUAL ALLEGATIONS

Plaintiff has a long history in the New Jersey Sate criminal judicial system. (Def. Br. 6-10, ECF No. 17; Certification of David L. DaCosta ("DaCosta Cert."), Ex. B, ECF No. 17-1). In 1973, Plaintiff was convicted of assault with intent to commit carnal abuse and was sentenced to a maximum of seven years. *Id.* Thereafter, Plaintiff had a series of charges (some dismissed) on a variety of sexual offenses and kidnapping. *Id.*

In 1988, Plaintiff was charged with numerous sexual offenses, including sexual assault, attempted sexual assault, and criminal restraint in connection with two separate incidents with two separate women in June 1988. *Id.* Plaintiff was convicted of the offenses in 1989; however, the convictions were reversed in 1992. (Amend. Compl., ¶¶ 29-30, ECF No. 5). In or about 1995, Plaintiff was retried on the same charges and was convicted in February 1995. *Id.* at ¶ 31. Plaintiff received a total sentence of forty years for the 1988 offenses. (Def. Br. 8, ECF

No. 17). On or about January 24, 2008, Plaintiff was granted parole and was scheduled to be released on March 18, 2008. (Amend. Compl., ¶ 35, ECF No. 5). In or around that time, the State of New Jersey filed a petition to civilly commit Plaintiff pursuant to the SVPA. (Def. Br. 10, ECF No. 17). In March 2008, Plaintiff's parole was rescinded. (Amend. Compl., ¶ 36, ECF No. 5). In November 2008, the State of New Jersey initiated civil commitment proceedings against Plaintiff. *Id.* at 37. In support of the State of New Jersey's Petition for Plaintiff's Civil Commitment, the State submitted Clinical Certificates from two psychiatrists, dated January 27, 2009 and January 28, 2009. (Sept. 7, 2010 Neal Wiesner Certification ("9/7/10 Wiesner Cert."), ¶ 3, Exs. 1 and 2, ECF No. 20-1).

In their Clinical Certificates, both psychiatrists listed the documents they reviewed to obtain Plaintiff's history, including Plaintiff's Department of Corrections Classification file and part of Plaintiff's Electronic Medical Records. *Id.* Both psychiatrists further detailed Plaintiff's criminal history, including sexually violent and non-sexual offenses, Plaintiff's psychiatric and substance abuse history and treatment, and Plaintiff's diagnosed mental abnormality (as that term is defined in the SVPA) and personality disorders. *Id.* Both psychiatrists note that they attempted to interview Plaintiff to perform a mental status examination of Plaintiff; however, the results were limited because Plaintiff refused to participate in an interview. *Id.*

Finally, both psychiatrists identified eight separate clinical characteristics and/or risk factors of Plaintiff for reoffending. *Id.* Included as <u>one of the eight</u> risk factors the psychiatrists considered were Plaintiff's scores from the Static 99[1] and MnSOST-R (Minnesota Sex Offender Screening Tool – Revised) actuarial risk assessment tools. *Id.* At the conclusion of each of their Clinical Certificates, both psychiatrists state: "It is my opinion that [Plaintiff] has serious

---

[1] The Static 99 is the <u>only</u> test Plaintiff provides as an example of being unreliable in the proposed Second Amended Complaint.

5

difficulty controlling his sexually offending behavior such that he is highly likely to sexually reoffend in the foreseeable future if not confined to a secure facility for treatment." *Id.*

In February 2009, Plaintiff was taken into custody pursuant to the SVPA. (Amend. Compl., ¶ 38, ECF No. 5). On July 20, 2010, an initial civil commitment hearing for Plaintiff was conducted pursuant to N.J.S.A. 30:4-27.24, *et seq.*, in the Superior Court of New Jersey, Law Division, Essex County, during which Plaintiff was represented by an Assistant Deputy Public Defender. (DaCosta Cert., Ex. C, ECF No. 17-1). After considering the evidence and testimony presented, the court entered a Judgment on July 22, 2010 finding by clear and convincing evidence that Plaintiff was a sexually violent predator ("SVP") and that Plaintiff should be civilly committed pursuant to the SVPA. *Id.* The court further ordered a review hearing of Plaintiff's civil commitment on July 14, 2011. *Id.*

### III.   STANDARD OF REVIEW

#### 1.   Amendment of pleadings under FED. R. CIV. P. 15

Pursuant to Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it; or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, a party may amend its pleading by leave of court. FED. R. CIV. P. 15(a)(2)

The decision whether to grant leave rests within the sound discretion of the court. *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a particularly liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002). However, leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or

6

dilatory motive; or (4) futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

A proposed amendment is futile if it "would fail to state a claim upon which relief could be granted." *Id.* Thus, "[i]n assessing 'futility' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* Recently, the Supreme Court has refined the standard for summary dismissal of a complaint that fails to state a claim in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).[2] Citing its recent opinion in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" *Iqbal,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice .... Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief." *Fed. Rule Civ. Proc.* 8(a)(2).

*Iqbal,* 129 S. Ct. at 1949-1950 (citations omitted). The Court further explained that:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

[2] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." FED. R. CIV. P. 8(d).

> assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

*Id.* at 1950.

Thus, to prevent a summary dismissal, a civil complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Id.* at 1949. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. *See id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3; *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that *Iqbal* provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before *Twombly. See Fowler,* 578 F.3d at 210. Now, after *Iqbal,* the Third Circuit requires that a district court must conduct the two-part analysis set forth in *Iqbal* when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [*Id.*] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* [*Phillips v. County of Allegheny,* 515 F.3d 224, 234-35 (3d Cir. 2008)]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Iqbal,* [129 S. Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that

---

[3] In *Conley,* as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

### 2.      42 U.S.C. § 1983 Action

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.      DISCUSSION

### A. APPLICABLE LAW

The SVPA, N.J.S.A. 30:4-27.24 *et seq.,* provides for the custody, care and treatment of involuntarily committed persons who are deemed to be SVPs. N.J.S.A. 30:4-27.25. The DOC operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment. N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights

9

of the patients as set forth in section 10 of P.L.1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature found that "[c]ertain individuals who commit sex offenses suffer from mental abnormalities or personality disorders which make them likely to engage in repeat acts of predatory sexual violence if not treated." N.J.S.A. 30:4-27.25. The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed. *Id.* The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Civil commitment procedures begin when an "agency with jurisdiction"[4] provides notice to the New Jersey Attorney General of a person "who may meet the criteria" of a SVP.[5] N.J.S.A. 30:4-27.27(a). If the Attorney General determines that public safety warrants the involuntary civil commitment of a SVP, the Attorney General may initiate a court proceeding for involuntary commitment by presenting to a judge for immediate review the certification of two doctors, one of which must be a psychiatrist, within three days before the petition for commitment. N.J.S.A. 30:4-27.28; 30:4-27.26; *see also In the Matter of Commitments of M.G.*

---

[4] "Agency with jurisdiction" refers to the agency which releases a person who is serving a sentence or a term of confinement. This term includes the DOC. N.J.S.A. 30:4-27.26.

[5] The Agency must provide notice to the Attorney General within ninety (90) days, or as soon as practicable, prior to the anticipated release from total confinement of a person who has been convicted of a sexually violent offense. N.J.S.A. 30:4-27.27(a)(1).

*and D.C.*, 331 N.J. Super. 365, 373 (App. Div. 2000). If the court finds that there is probable cause to believe that the person is a SVP, it will authorize the temporary commitment of the individual and schedule a final hearing, which must be scheduled within twenty (20) days of the temporary commitment. N.J.S.A. 30:4-27.28(g) and 30:4-27.29(a). Pursuant to the SVPA, the individual must remain confined and cannot be released prior to the final hearing. N.J.S.A. 30:4-27.28(g).

At least ten (10) days before the final hearing, the individual and his/her attorney must be provided with (1) copies of the clinical certificates and supporting documents, (2) the temporary court order, and (3) a statement of the individual's rights at the final hearing.[6] N.J.S.A. 30:4-27.30(a). The individual is not permitted to appear at the hearing without an attorney, and will be appointed one if indigent. *See* N.J.S.A. 30:4-27.29(c).

At the final hearing, the court must find by clear and convincing evidence that the individual is a SVP in need of continued involuntary commitment to issue an order of involuntary commitment. N.J.S.A. 30:4-27.32(a). To prove that a person is a SVP, the State must demonstrate by clear and convincing evidence that the individual (1) has committed a predicate offense, and (2) suffers from a present mental abnormality such that the individual presents a danger to society unless confined. N.J.S.A. 30:4-27.26. A psychiatrist who has conducted a personal examination of the individual within five (5) days of the final hearing, must testify at the hearing as to the clinical basis for involuntary commitment as a SVP. N.J.S.A. 30:4-27.30(b). Other members of the person's treatment team and other witnesses

---

[6] An individual subject to involuntary commitment is afforded the following rights at his/her court hearing: (1) the right to be represented by counsel or, if indigent, by appointed counsel; (2) the right to be present at the court hearing unless the court determines that because of the person's conduct at the court hearing the proceeding cannot reasonably continue while the person is present; (3) the right to present evidence; (4) the right to cross-examine witnesses; and (5) the right to a hearing in camera. N.J.S.A. 30:4-27.31.

with relevant information, offered by the individual or by the Attorney General, shall also be permitted to testify at the final hearing. *Id.*

An individual that is found to be a SVP requiring commitment under the SVPA is referred to the STU. *See* N.J.S.A. 30:4-27.34. The individual will receive annual review hearings to determine whether the individual should remain committed. N.J.S.A. 30:4-27.35. Each annual review hearing is conducted in the same manner as the original commitment hearing and a new Court order is required to continue the individual's commitment. N.J.S.A. 30:4-27.35. Additionally, a SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge. N.J.S.A. 30:4-27.36.

**B. ANALYSIS**

**1.      Plaintiff does not allege facts sufficient to state a cause of action under the Proposed First Cause of Action**

Plaintiff claims in the Proposed First Cause of Action against Defendants that the use of invalid and unreliable methods, means, standards, procedures and practices to determine the dangerousness of an individual under the SVPA – and therefore, to determine whether an individual is a SVP in need of continued confinement – violates his and the proposed plaintiffs' constitutional rights under the Fourteenth Amendment of the Constitution.

In support of Plaintiff's proposed cause of action, Plaintiff alleges:

Defendants have and will continue to deprive plaintiffs of their freedom based upon methods and procedures so inaccurate that, as a matter of fact, a coin toss would result in more fair and warranted determinations.

(Sec. Amend. Compl., ¶ 13, ECF No. 16-4).

Indeed, according to one study, the actuarial instrument – the Static 99 – primarily used by defendants to predict dangerousness is so inaccurate that:

for every person that the Static 99 correctly predicts would recidivate, it would wrongly condemn 7 to continued incarceration.

12

> Of the [***] people who would in fact recidivate, the Static 99 misses [* * *] 39% percent.

(Tamara Rice Lave, Controlling Sexually Violent Predators: Continued Incarceration at what Cost? *New Criminal Law Review* [forthcoming 2011]).

*Id.* at ¶ 14.[7]

> Defendants fail to provide fair, accurate or valid risk assessment methods related to plaintiffs' purported likelihood of committing future acts of violence, subjecting them to potentially indefinite treatment, and further violating their rights as guaranteed by state laws regarding mental health facilities.

*Id.* at ¶ 15.   In the Proposed First Cause of Action, Plaintiff repeats his prior conclusory allegations that the methods are invalid and unreliable.

> Plaintiffs allege that the methods, means, standards, procedures and practices used by defendants to determine their dangerousness have insufficient validity to be used as a predicate for dangerousness determinations under the SVPA.

> Plaintiffs allege that the methods, means, standards, procedure [sic] and practices used by defendants to determine their dangerousness, *inter alia*:

> A.    Are so unreliable that for every 8 persons committed by defendants, seven have lost their liberty for no reason;

> B.    Are so unreliable that a coin toss would be more accurate;

> C.    Are so unreliable that their use and application shocks the conscience and violate their rights to substantive and procedural due process;

> D.    Are further insufficiently reliable to determine a lack of volitional control or volitional impairment, a co-requisite for commitment under the SVPA …

*Id.* at ¶¶ 65-66.

---

[7] Plaintiff attaches to the 7/30/10 Wiesner Certification in support of Plaintiff's motion a copy of an unpublished article by Tamara Rice Lave titled "Controlling Sexually Violent Predators: Continued Incarceration at What Cost?" The attached article is a draft copy marked "**DRAFT – DO NOT CITE**". (July 30, 2010 Neal Wiesner Certification ("7/30/10 Wiesner Cert."), ¶ 5, Ex. B, ECF No. 16-1).

The Fourteenth Amendment provides that "[n]o State shall … deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325 (1937). These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

The right to substantive due process "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right. *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). The right to procedural due process protects an individual from the use of procedures that are not constitutionally adequate to deprive the individual of a constitutionally protected interest. *See Zinermon*, 494 U.S. at 126. In order to assert a claim for violation of procedural due process, a plaintiff must allege (1) a protected interest and (2) the State deprived plaintiff of that interest using procedures that were not constitutionally adequate. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

With respect to Plaintiff's Proposed First Cause of Action, Plaintiff fails to allege what constitutionally protected interest he has been denied. The Court is therefore left to surmise that Plaintiff is asserting that he and the two proposed plaintiffs have a substantive liberty interest to

14

be free from involuntary civil commitment.    Furthermore, Plaintiff's proposed Second Amended Complaint contains only conclusory labels and no facts to support an entitlement to relief. Other than the lone allegation quoted above from a draft of an unpublished article that states that the Static 99 is inaccurate, Plaintiff alleges no facts in support of his conclusory allegations that the methods used by the State to determine whether an individual is a SVP under the SVPA are invalid and unreliable.[8] Plaintiff merely alleges conclusory statements that the methods - whatever they are - are "inaccurate", have "insufficient validity", and are "unreliable." (Sec. Amend. Compl., ¶¶ 13, 65, 66). However, Plaintiff fails to allege any facts demonstrating how and/or why the challenged methods are inaccurate, are invalid, and are unreliable. In fact, other than a single reference to the Static 99, Plaintiff fails to even identify or describe the challenged methods.[9]

Moreover, although Plaintiff alleges that the Static 99 is "primarily used by defendants to predict dangerousness," he fails to allege any facts to demonstrate that the State actually relied primarily on the Static 99 in his case – or at all in the case of the two proposed plaintiffs - to determine whether he is a SVP in need of continued confinement.[10] As such, the Court is left to speculate as to what the methods are, how they are invalid and/or unreliable, and how their application deprived Plaintiff and the two proposed plaintiffs of their constitutional rights.

---

[8] Plaintiff also attaches to the 7/30/10 Wiesner Certification a Certification of Charles Patrick Ewing, J.D., Ph.D.; however, Plaintiff makes no reference to Dr. Ewing's Certification in the proposed Second Amended Complaint. (7/30/10 Wiesner Cert., Ex. D, ECF No. 16-1)

[9] Although Plaintiff refers to the Static 99, he argues that the methods challenged are "all of defendants' predictive procedures and standards," and not just the Static 99. (Pl. Reply Br. 3, ECF No. 20-5)

[10] Plaintiff also fails to state or allege any facts to demonstrate that New Jersey Courts – and particularly the trial court that determined that Plaintiff was a SVP - rely primarily on the Static 99 to determine dangerousness. In fact, there are no facts alleged in the proposed Second Amended Complaint that show that the State in the case at bar relied on the Static 99 for anything.

"[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (internal citation omitted). Although legal conclusions can be used in a complaint, they must be supported by factual allegations. *Iqbal,* 129 S. Ct. at 1950. Accordingly, because Plaintiff alleges only conclusory statements that the mostly unidentified methods, means, standards, procedures and practices used to determine dangerousness under the SVPA have insufficient validity and are unreliable, and does not allege sufficient facts to support a facially plausible claim against any of the defendants, Plaintiff's Proposed First Cause of Action fails to state a claim for violation of procedural and substantive due process.[11] This is especially true in light of the analysis contained in Section 2 below.

For these reasons, Plaintiff's motion to add the Proposed First Cause of Action in the proposed Second Amended Complaint is denied.

## 2.   The State found by clear and convincing evidence that Plaintiff was a SVP in need of continued confinement

Plaintiff does not argue that the SVPA, on its face, is unconstitutional. Indeed, the SVPA has been examined and found to be constitutional by both the District Court in New

---

[11] Although Plaintiff's proposed First Cause of Action is captioned as "Violation of Procedural and Substantive Due Process Guarantees," Plaintiff alleges in ¶ 66 of the First Cause of Action that Defendants' acts also violate his and the proposed plaintiffs' "rights to equal protection." (Sec. Amend. Compl., ¶ 66, ECF No. 16-4). However, Plaintiff fails to state a claim for violation of his right to equal protection under the Fourteenth Amendment since he fails to allege that he is a member of an identifiable class, that he was intentionally treated differently from others similarly situated, or that there is no rational basis for the difference in treatment. "The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)).

Accordingly, to assert a valid equal protection claim, Plaintiff was required to allege: (1) he is a member of an identifiable class; (2) sufficient facts to show defendants treated him differently from other similarly situated persons; and (3) defendants acted with an intent or purpose to discriminate against him based on his membership in the identifiable class. *See Wilson v. Schillinger,* 761 F.2d 921, 929 (3d Cir.1985). Plaintiff has not alleged any of these factors. Therefore, Plaintiff has failed to state a claim for violation of his and the proposed plaintiffs' right to equal protection.

Jersey and the Supreme Court of New Jersey. *See Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); *In re Commitment of W.Z.*, 173 N.J. 109 (2002).

In fact, Plaintiff specifically states "Plaintiff has nowhere challenged the facial Constitutionality of the Sexually Violent Predator Act ("SVPA"), its provisions requiring predictions of future conduct, nor has he taken any position that predictions of future dangerousness are *per se* unconstitutional." (Pl. 9/14/10 Lr. 2, ECF No. 23). Rather, Plaintiff argues that the methods used by Defendants to determine "dangerousness" under the SVPA are unconstitutional. Upon review of the facts in the record, it becomes clear that Plaintiff is essentially arguing that he and the two proposed plaintiffs did not receive a fair trial.

Pursuant to the SVPA, a "sexually violent predator" is defined as "a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26. The term "mental abnormality" is defined under the SVPA as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." *Id.* Finally, the phrase "likely to engage in acts of sexual violence" is defined as "the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." *Id.*

In order for an individual to be deemed a SVP in need of confinement, the State must demonstrate by clear and convincing evidence that the individual (1) has committed a predicate sexually violent offense and (2) currently suffers from a mental condition that makes him a

sexually violent predator and currently presents a high likelihood of committing sexually violent offenses if released. *In re Commitment of P.Z.H.*, 377 N.J. Super. 458, 465-66 (App. Div. 2005); *see also* N.J.S.A. 30:4-27.26.

In Plaintiff's case, as required under the SVPA, which Plaintiff agrees is not unconstitutional, the State submitted to the court clinical certificates from two psychiatrists in support of its Petition for Plaintiff's Civil Commitment as required pursuant to N.J.S.A. 30:4-27.10(c). (9/7/10 Wiesner Cert., ¶ 3, Exs. 1 and 2, ECF No. 20). After a review of the State's Petition and Clinical Certificates, the Court placed Plaintiff in custody pursuant to the SVPA. (Pl. Amend. Compl., ¶ 38). In order to do so, the Court was required to find that there was probable cause to believe that Plaintiff was in need of involuntary commitment to treatment. *See* N.J.S.A. 30:4-27.10(h).

The Court subsequently held a final commitment hearing on July 20, 2010 during which evidence and testimony was submitted. (DaCosta Cert. ¶ 5, Ex. C, ECF No. 17-1). Pursuant to the SVPA, Plaintiff was represented by counsel and had the opportunity to present evidence and to cross-examine the State's witnesses. *See* N.J.S.A. 30:4-27.31. After reviewing the evidence and testimony, the Court found by clear and convincing evidence that Plaintiff was a SVP in need of continued confinement. (DaCosta Cert., Ex. C, ECF No. 17-1). In order to do so, the trial court was required to find by clear and convincing evidence that Plaintiff was likely to commit sexually violent crimes if released. *See* N.J.S.A. 30:4-27.26.

If Plaintiff concluded that he was injured by the trial court's judgment ordering his civil commitment because the trial court utilized inadmissible evidence, or somehow misapplied its own law, or made findings of fact contrary to the evidence during the civil commitment hearing, and thus is seeking to overturn his civil commitment, the proper course of action was to file an

appeal. It is inappropriate to ask the federal court to review a trial court's final judgment; in fact, federal courts are without jurisdiction to undertake such a review under the *Rooker-Feldman* doctrine.[12] *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-83 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923); *See also Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005) (*Rooker-Feldman* doctrine bars a District Court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."); *Bonham v. Givens*, 197 Fed. App'x 148, 150 (3d Cir. 2006) (*Rooker-Feldman* doctrine deprived District Court of jurisdiction to entertain plaintiff's § 1983 claims where plaintiff sought remedies that would prevent enforcement of state court order continuing plaintiff's involuntary commitment in state hospital); *Nelson v. Hughes*, No. 07-5766, 2008 WL 5046767, at *2 (D.N.J. Nov. 20, 2008) (where "Plaintiff asks [the District] Court to effectively nullify a decision reached in state court, the *Rooker-Feldman* doctrine presents a complete bar to [the District] Court's jurisdiction over the matter.").

For these additional reasons, Plaintiff's motion to add the Proposed First Cause of Action is denied.

---

[12] Although Plaintiff argues that he is not seeking a "relitigation" of his claims or to show that the court erred in his particular case (Pl. Reply Br. 7, ECF No. 20-5) and does not "seek review of his commitment hearing" (Pl. 9/14/10 Lr. 4, ECF No. 23), Plaintiff's allegations that the methods used to determine dangerousness – which the trial court was obligated to find during his civil commitment hearing – are invalid and unreliable necessarily challenge the validity of the trial court's decision to civilly commit him. While the *Rooker-Feldman* doctrine does not bar a general constitutional challenge to a state statute, it does bar a specific challenge to the trial court's adjudication of the plaintiff's case. *See Exxon.,* 544 U.S. at 286.

3.  **Plaintiff's Proposed First Cause of Action effectively seeks an invalidation of his and the proposed plaintiffs' civil commitment and the law of habeas corpus precludes this procedural evasion**

Plaintiff argues that "the methods, means, standards, procedures and practices employed by defendants are so fallacious in predicting re-offense that no person, including himself, can properly, in a Constitutional sense, be deprived of liberty as their result." (Pl. Reply Br. 7,8, ECF No. 20-5). Accordingly, Plaintiff is effectively challenging evidence presented by the State that is essential to civil commitment under the SVPA. Furthermore, by claiming in the proposed Second Amended Complaint that the methods are so unreliable that their use by Defendants is unconstitutional, Plaintiff is effectively claiming that a Court considering these methods to determine recidivism could never find by clear and convincing evidence that he – or any individual – is a SVP. If this is the case, then Plaintiff's challenge necessarily implicates the validity of his civil commitment, which may not be raised via a 42 U.S.C. § 1983 action, but only via a petition for writ of habeas corpus and after exhausting his state court remedies as required by 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *see also Wilkinson v. Dotson,* 544 U.S. 74, 81 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."); *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]henever the challenge ultimately attacks the 'core of habeas' -- the validity of the

continued conviction or the fact or length of the sentence -- a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition."); *Tedford v. Hepting*, 990 F.2d 745, 749 (3d Cir. 1993) (§ 1983 relief unavailable where "[p]laintiff [sought] a declaration that his constitutional rights on appeal were violated, [which was] a direct challenge to the validity of the conviction and the legality of plaintiff's confinement.").

Furthermore, although Plaintiff argues in his briefs that the relief requested under the Proposed First Cause of Action will not necessarily result in a restoration of his liberty - and thus need not be brought as a petition for writ of habeas corpus – Plaintiff's proposed Second Amended Complaint, on its face, requests Plaintiff's release. Indeed, Plaintiff requests that the Court issue an Order "[e]njoining defendants, their agents, officials, employees and all persons acting in concert with them from continuing to restrain or confine, under color of State law, plaintiffs or others determined to be dangerous by methods, means, standards, procedure and practices which are so unreliable as to violate their rights to procedural and substantive due process as well as plaintiff's rights otherwise." (Sec. Amend. Compl., ¶ 86(b)) (emphasis added).

Plaintiff also states that he and the proposed plaintiffs do not "seek an individuated relitigation of their civil commitment, or to show that the defendants made an error in their particular case." (Pl. Reply Br. 7, ECF No. 20-5). In addition, Plaintiff does not request in his proposed Second Amended Complaint a new civil commitment hearing. Therefore, the only possible result from Plaintiff's Proposed First Cause of Action is an invalidation of Plaintiff's and the proposed class' civil commitment, which would necessarily imply their release. *See Wilkinson*, 544 U.S. at 83 ("[A] case challenging a sentence seeks a prisoner's 'release' in the

only pertinent sense: It seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement; the fact that the State may seek a *new* judgment (through a new trial or a new sentencing proceeding) is beside the point."). In fact, Plaintiff admits that his motion to amend "was conceived as the only viable way he may bring a challenge which, he contends, would restore his liberty and, potentially, the liberty of his fellow committees as well." (Pl. Reply 1, ECF No. 20-5) (emphasis added). Accordingly, Plaintiff's claim is improperly raised as a 42 U.S.C. § 1983 action and should be raised via a petition for writ of habeas corpus. *See Preiser,* 411 U.S. at 500 (1973).

Accordingly, Plaintiff's motion to add the Proposed First Cause of Action is denied.

**4.    Relief in the form of money damages is not cognizable under § 1983 to the extent it arises under the Proposed First Cause of Action**

Non-prospective money damages sought by Plaintiff in connection with his Proposed First Cause of Action are not available via a § 1983 action. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court addressed whether a prisoner could challenge the constitutionality of his conviction in a suit seeking only damages under § 1983, relief which is not available in a habeas corpus action. As the Court in *Preiser*, the Court held that a damages claim based on a challenge to the constitutionality of a prisoner's confinement is not cognizable under § 1983.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87. The Court explained that a claim seeking the invalidation of a conviction is improper as a § 1983 suit.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted). Finally, the Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90. *See also Wilkinson*, 544 U.S. at 81 ("success on the prisoner's claim for money damages … would necessarily imply the invalidity of [the plaintiff's confinement]" and would therefore not be cognizable in a § 1983 action).

Plaintiff's claim in the proposed Second Amended Complaint for "monetary damages" against Defendants as they relate to the Proposed First Cause of Action presents the type of claim addressed in *Heck*.[13]   A finding that Plaintiff – and the proposed plaintiffs - current confinement result from the use by Defendants of allegedly invalid means and methods to determine dangerousness under the SVPA would necessarily imply the invalidity of his commitment.   Since Plaintiff does not allege that his involuntary commitment has been

---

[13] While Plaintiff does not specifically allege that he is seeking money damages in connection with his Proposed First Cause of Action, the proposed Second Amended Complaint appears to do so.  Indeed, as part of the relief sought, Plaintiff seeks "monetary damages to compensate plaintiffs for the injuries, harms and losses of liberty they have and continue to suffer as a result of defendants' violations of Federal and State law." (Sec. Amend. Compl., ¶86(f), ECF No. 16-4).  These injuries purportedly include those resulting from the use of "methods, means, standards, procedure [sic] and practices" by Defendants that "violate [Plaintiff's] rights to equal protection and procedural and substantive due process." *Id.* at ¶ 66.

invalidated, his claim for damages based upon the Proposed First Cause of Action has not yet accrued; therefore, it is improper.

     **5.**    **Plaintiff's requested relief for § 1983 damages against Defendants Dow, Lanigan, Velez, Poag, and Main in their official capacities is barred by the <u>Eleventh Amendment</u>**

Plaintiff's Amended Complaint and proposed Second Amended Complaint asserts that he is suing Defendants Dow, Lanigan, Velez, Poag, and Main in their individual and official capacities. In Plaintiff's request for relief in his Amended Complaint and proposed Second Amended Complaint, Plaintiff seeks "monetary damages" against Defendants resulting from Defendants' violations of Federal and State law. (Amend. Compl., ¶ 91(d), ECF No. 5; Sec. Amend. Compl., ¶ 86(f), ECF No. 16-4). As agents of the State of New Jersey, the Eleventh Amendment bars Plaintiff's § 1983 money damages claims against Defendants Dow, Lanigan, Velez, Poag, and Main in their official capacities. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. It is well established that the Eleventh Amendment immunizes states and state agencies from federal suits by private parties. *See e.g., Seminole Tribe of Fla. v. Florida.,* 517 U.S. 44, 54 (1996) ("[E]ach State is a sovereign entity in our federal system; and ... 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent ....") (internal citation omitted). "That a State may not be sued without its consent is a fundamental rule of jurisprudence ... [and] it has become established by repeated decisions ... [that] the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent." *Penhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (quoting *Ex parte New York,* 256 U.S. 490, 497 (1921)).

24

Eleventh Amendment immunity "extends to suits against departments or agencies of the state having no existence apart from the state." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981), *cert. denied,* 469 U.S. 886 (1984). "Suits against state officials in their official capacity ... should be treated as suits against the State." *Hafer v. Melo,* 502 U.S. 21, 25 (1991). In other words, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (internal citations omitted). This includes suits against the New Jersey Attorney General. *See State Troopers Non-Commissioned Officers Assoc. of N.J. v. New Jersey*, 643 F. Supp. 2d 615, 624 (2009). However, "[a]lthough an individual may not sue the state for monetary damages ... a plaintiff may challenge the constitutionality of a state law by suing a state official acting in his official capacity for injunctive relief." *Alston v. Parker*, No. 95-6158, 2007 WL 1349303, at *7 (D.N.J. May 2, 2007) (*citing Ex parte Young,* 209 U.S. 123, 159-160 (1908); *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14 (1985) (stating that "official-capacity actions for prospective relief are not treated as actions against the State"); *Koslow v. Pennsylvania,* 302 F.3d 161, 168 (3d Cir. 2002) (stating that purely prospective relief against state officials for ongoing violations of federal law is available under the "legal fiction" of *Ex parte Young*)).

It is readily apparent that the New Jersey Department of Corrections is a department or agency of the State of New Jersey which has no existence apart from the State. *Snyder v. Baumecker*, 708 F. Supp. 1451, 1456 (D.N.J. 1989) ("Based upon the functions and characteristics of the Corrections Department, the court concludes that it is the alter ego of the State of New Jersey and, as such, is immune from suit under the eleventh amendment."). Similarly, the Department of Human Services and the Division of Mental Health Services are

agencies of the State of New Jersey having no existence separate from the State. *See Salerno v. Corzine*, No. 06-3547, 2006 WL 3780587, at *3 (D.N.J. Dec. 20, 2006). The Special Treatment Unit is a State facility run by the Department of Corrections. *See* N.J.S.A. 30:4-27.34. As state officials, when acting in their official capacities, Defendants Dow, Lanigan, Velez, Poag, and Main receive the same protection from suit as provided to their governmental entity. Therefore, Plaintiff's § 1983 damages claims against them, in their official capacities, cannot stand.

For these reasons, the Court respectfully recommends that the District Court dismiss Plaintiff's claims for § 1983 money damages against Dow, Lanigan, Velez, Poag, and Main in their official capacities.

### 6. Plaintiff fails to satisfy the requirements under FED. R. CIV. P. 23 for class certification

Because the Court finds that the Proposed First Cause of Action is futile, Plaintiff's motion to certify the action for that Count is moot. Nevertheless, Plaintiff fails to satisfy the requirements under FED. R. CIV. P. 23 for class certification.

To obtain class certification, a plaintiff must satisfy FED. R. CIV. P. 23(a), which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a)

These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997). Furthermore, a plaintiff seeking class certification must satisfy one of the subsections of

FED. R. CIV. P. 23(b).   RULE 23(b) requires a demonstration that there is a threat of inconsistent, varying, or impeding adjudications against individual class members if the case is not adjudicated as a class action; that final injunctive or declaratory relief is appropriate for the class as a whole; or that common questions of law and fact predominate over individual inquiries and a class action is the optimal way to fairly and efficiently adjudicate the controversy. *See Amchem Prods.,* 521 U.S. at 613.  In borderline cases where there are doubts regarding whether a class is certifiable, certification should be resolved in the movant's favor. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir. 1985).

The Court of Appeals for the Third Circuit has recognized that "a thorough examination of the factual and legal allegations" may be necessary when deciding a motion for class certification. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 166 (3d Cir. 2001).  Such an inquiry into the merits is appropriate when "necessary to determine whether the alleged claims can be properly resolved as a class action." *Id.* at 168.  Nonetheless, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be taken as true." *In re Chiang,* 385 F.3d 256, 262 (3d Cir. 2004).  If the Court determines that proceeding with a class action is the most appropriate method of adjudicating this matter, then the Court must appoint class representatives and class counsel. FED. R. CIV. P. 23(g)(1).

Plaintiff argues that class certification should be granted pursuant to FED. R. CIV. P. 23(c)(4), which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."  While the Court acknowledges that FED. R. CIV. P. 23(c)(4) permits a party to seek class certification for limited issues – which Plaintiff is

requesting here with respect to his Proposed First Cause of Action – the party must first satisfy the requirements under FED. R. CIV. P. 23(a) and (b) before certification can be granted.

Plaintiff ignores these requirements. Plaintiff argues generally that the "methods, means, standards, procedures and practices employed by defendants are so fallacious in predicting re-offense that <u>no person</u>,[14] including himself, can properly, in a Constitutional sense, be deprived of liberty as their result" and makes the conclusory statement that "there is a common question of law and fact expressive of the rights of the proposed class." (Pl. Reply Br. 7-8, ECF No. 20-5). Plaintiff also states that "[u]pon information and belief, the additional proposed plaintiffs set forth in plaintiff's proposed amended complaint are exemplary of <u>most</u> of plaintiff's fellow committees who would wish to join in the cause of action for which class certification is requested." (9/7/10 Wiesner Cert. ¶ 4, ECF No. 20) (emphasis added). Putting aside the fact that these statements are insufficient to satisfy the requirements under FED. R. CIV. P. 23(a) and (b), it appears to demonstrate that the two proposed plaintiffs' claims may not be typical of the proposed class since they are exemplary of only "most" and not all of Plaintiff's fellow committees.

As such, Plaintiff fails to adequately address - and therefore fails to demonstrate - numerosity, commonality, typicality, and adequacy required under FED. R. CIV. P. 23(a). Plaintiff also fails to address entirely whether any of the circumstances enumerated in FED. R. CIV. P. 23(b) exists.

---

[14] Interestingly, Plaintiff states that excluded from his statement that "no person" can be deprived of liberty based upon the challenged methods are "former offenders who profess an intention to re-offend." (Pl. Reply Br. 8, FN 5, ECF No. 20-5). However, Plaintiff fails to provide any information about these individuals and whether they would or would not be included in the proposed class. A moment's reflection reveals that Plaintiff's effort to segregate some serial offenders from others eliminates the possibility that any of the putative members of the class share "typical" claims and "common" questions of law and fact.

Accordingly, class certification is inappropriate at this time. For these reasons, the Court respectfully recommends that the District Court deny Plaintiff's motion for class certification.

## V.    CONCLUSION

For the foregoing reasons, the Court (1) denies Plaintiff's motion to add the Proposed First Cause of Action; (2) grants Plaintiff's motion to add Joseph Elchin and Matthew Harris as plaintiffs; and (3) grants Plaintiff's motion to withdraw the First, Second, Fifth and Sixth Causes of Action in the Amended Complaint.[15] The Court additionally respectfully recommends that the District Court deny Plaintiff's motion to certify the class for the Proposed First Cause of Action and to appoint class counsel.[16]

Joseph A. Dickson, U.S.M.J.

cc.    Hon. Dennis M. Cavanaugh, U.S.D.J.

[15] Because the undersigned denies for the above-stated reasons Plaintiff's motion to add the Proposed First Cause of Action, an analysis of whether the *Younger* abstention under *Younger v. Harris*, 401 U.S. 37 (1971) applies in this case is unnecessary.

[16] Since class certification is inappropriate at this time, Plaintiff's motion for appointment of class counsel is moot.

29